AO 243 (Rev. 5/85)  MOTION UNDER 28 USC § 2255 TO VACATE, SET ASIDE, OR CORRECT
SENTENCE BY A PERSON IN FEDERAL CUSTODY

| # United States District Court | District   Guam | 04-00014 |
|---|---|---|

| Name of Movant   Fernando Novelo Nostratis | Prisoner No.   01909-093 | Case No.   99-00100-001 |
|---|---|---|

Place of Confinement
FCI-Sheridan, P.O. Box 5000, Sheridan, Oregon, 97378

UNITED STATES OF AMERICA      v.      FERNANDO NOVELO NOSTRATIS

(name under which convicted)

## MOTION

1. Name and location of court which entered the judgment of conviction under attack __U.S. District Court of Guam__

2. Date of judgment of conviction __May 31, 2002__

3. Length of sentence __One hundred thirty-five (135) months__

4. Nature of offense involved (all counts) __Count 1) 21 U.S.C. Sect. 963, 960 & 952(a), Conspiracy to import Crystal Methamphetamine; Count 2) 21 U.S.C. Sect. 846, 841(a)(1), Attempt to possess Methamphetamine with intent to distribute__

5. What was your plea? (Check one)
   (a) Not guilty   ☐
   (b) Guilty   ☒
   (c) Nolo contendere   ☐

   If you entered a guilty plea to one count or indictment, and a not guilty plea to another count or indictment, give details:

   N/A

6. If you pleaded not guilty, what kind of trial did you have? (Check one)
   (a) Jury   ☐        N/A
   (b) Judge only   ☐

7. Did you testify at the trial?
   Yes ☐ No ☐        N/A

8. Did you appeal from the judgment of conviction?
   Yes ☒ No ☐

COPY

9. If you did appeal, answer the following:

   (a) Name of court <u>United States Court of Appeals, Ninth Circuit, #02-10296</u>

   (b) Result <u>Judgment of the District Court affirmed</u>

   (c) Date of result <u>March 11, 2003</u>

10. Other than a direct appeal from the judgment of conviction and sentence, have you previously filed any petitions, applications or motions with respect to this judgment in any federal court?
Yes ☐ No ☒

11. If your answer to 10 was "yes," give the following information:

   (a) (1) Name of court _____ N/A _____

      (2) Nature of proceeding _____ N/A _____

      (3) Grounds raised_____ N/A _____

      (4) Did you receive an evidentiary hearing on your petition, application or motion?
         Yes ☐ No ☐         N/A

      (5) Result_____ N/A _____

      (6) Date of result _____ N/A _____

   (b) As to any second petition, application or motion give the same information:

      (1) Name of court _____ N/A _____

      (2) Nature of proceeding _____ N/A _____

      (3) Grounds raised_____ N/A _____

(4) Did you receive an evidentiary hearing on your petition, application or motion?
Yes ☐ No ☐                                      N/A

(5) Result_____ N/A _____

(6) Date of result _____ N/A _____

(c) Did you appeal, to an appellate federal court having jurisdiction, the result of action taken on any petition, application or motion?
(1) First petition, etc.        Yes ☐ No ☐    N/A
(2) Second petition, etc.      Yes ☐ No ☐

(d) If you did not appeal from the adverse action on any petition, application or motion, explain briefly why you did not:

N/A

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

_____

12. State *concisely* every ground on which you claim that you are being held in violation of the constitution, laws or treaties of the United States. Summarize briefly the facts supporting each ground. If necessary, you may attach pages stating additional grounds and facts supporting same.

CAUTION: If you fail to set forth all ground in this motion, you may be barred from presenting additional grounds at a later date.

For your information, the following is a list of the most frequently raised grounds for relief in these proceedings. Each statement preceded by a letter constitutes a separate ground for possible relief. You may raise any grounds which you have other than those listed. However, you should raise in this motion all available grounds (relating to this conviction) on which you based your allegations that you are being held in custody unlawfully.

Do not check any of these listed grounds. If you select one or more of these grounds for relief, you must allege facts. The motion will be returned to you if you merely check (a) through (j) or any one of the grounds.

(a) Conviction obtained by plea of guilty which was unlawfully induced or not made voluntarily or with understanding of the nature of the charge and the consequences of the plea.

(b) Conviction obtained by use of coerced confession.

(c) Conviction obtained by use of evidence gained pursuant to an unconstitutional search and seizure.
(d) Conviction obtained by use of evidence obtained pursuant to an unlawful arrest.
(e) Conviction obtained by a violation of the privilege against self-incrimination.
(f) Conviction obtained by the unconstitutional failure of the prosecution to disclose to the defendant evidence favorable to the defendant.
(g) Conviction obtained by a violation of the protection against double jeopardy.
(h) Conviction obtained by action of a grand or petit jury which was unconstitutionally selected and impanelled.
(i) Denial of effective assistance of counsel.
(j) Denial of right of appeal.

A. Ground one: __Petitioner was deprived of his Rights under Article 36,__

__Vienna Convention__

Supporting FACTS (state *briefly* without citing cases or law) _____

__Please see attached Brief in Support__

_____

_____

_____

_____

B. Ground two: __Petitioner was deprived of his Sixth Amendment Guarantee__

__of effective assistance of counsel.__

Supporting FACTS (state *briefly* without citing cases or law): _____

__Please see attached Brief in Support__

_____

_____

_____

_____

C. Ground three: __Petitioner was deprived of his Sixth Amendment Guarantee__

__of effective assistance of counsel.__

Supporting FACTS (state *briefly* without citing cases or law): _____

__Please see attached Brief in Support__

_____

_____

D. Ground four: __Petitioner was deprived of his Sixth Amendment Guarantee__

__of effective assistance of counsel on appeal.__

Supporting FACTS (state *briefly* without citing cases or law): _____

__Please see attached Brief in Support__

13. If any of the grounds listed in 12A, B, C, and D were not previously presented, state briefly what grounds were not so presented, and give your reasons for not presenting them: __Defense Counsel advised Petitioner that__

__his rights under the Vienna Convention did not apply to the federal criminal__

__prosecution, and thus, was not raised; ineffective assistance claims are best__

__brought on motion to vacate, set aside or correct sentence, 28 U.S.C., 2255__

14. Do you have any petition or appeal now pending in any court as to the judgment under attack?
Yes ☐ No ☒

15. Give the name and address, if known, of each attorney who represented you in the following stages of the judgment attacked herein:

(a) At preliminary hearing __Rawland Montanona, Public Defender, Guam__

(b) At arraignment and plea __Stephanie Flores, Public Defender, Guam, 410 W. O'Brien__
__Dr., Hagatna, Guam, 96910__

(c) At trial __N/A__

(d) At sentencing __William Gavras, 118-A Chalan Santo Papa, Hagatna, Guam__
__96910__

(e) On appeal  Jehan'Ad G. Martinez, 1008 Pacific News Bldg., 238 Archbishop,

F.C. Flores St., Hagatna, Guam, 96910

(f) In any post-conviction proceeding

N/A

(g) On appeal from any adverse ruling in a post-conviction proceeding

N/A

16. Were you sentenced on more than one count of an indictment, or on more than one indictment, in the same court and at approximately the same time?
Yes ☒ No ☐

17. Do you have any future sentence to serve after you complete the sentence imposed by the judgment under attack?
Yes ☐ No ☒

(a) If so, give name and location of court which imposed sentence to be served in the future:

N/A

(b) Give date and length of the above sentence:

N/A

(c) Have you filed, or do you contemplate filing, any petition attacking the judgment which imposed the sentence to be served in the future?
Yes ☐ No ☐                    N/A

Wherefore, movant prays that the Court grant him all relief to which he may be entitled in this proceeding.

None
Signature of Attorney (if any)

I declare under penalty of perjury that the foregoing is true and correct. Executed on

March 8, 2004
(date)

Signature of Movant

Fernando Novelo Nostratis
01909-093
FCI-SHERIDAN
P.O. Box 5000
Sheridan, Oregon  97378-5000

UNITED STATES DISTRICT COURT
DISTRICT OF GUAM

| | | |
|---|---|---|
| FERNANDO NOVELO NOSTRATIS, | ) | Civ. No._____ |
| | ) | (99-00100-001) |
| Petitioner, | ) | |
| | ) | BRIEF IN SUPPORT OF |
| -Vs- | ) | MOTION TO VACATE, SET ASIDE, |
| | ) | OR CORRECT SENTENCE |
| UNITED STATES OF AMERICA, | ) | 28 U.S.C. Section 2255 |
| | ) | |
| Respondent, | ) | |
| _____ | ) | |

COMES NOW, Fernando Novelo Nostratis, hereinafter referred to as "Petitioner," and pursuant to 28 U.S.C. Section 2255 hereby moves this Court for it's Order vacating with prejudice the judgment of conviction in the captioned case number 99-00100-001 on the following enumerated grounds.

1.      Petitioner was deprived of his rights under Article 36, Vienna Convention when arresting officers and federal officials failed to notify and inform Petitioner of his right to contact and seek assistance from the Philippine Consulate.

2.      Petitioner was deprived of his Sixth Amendment Guarantee of effective assistance of counsel by Stephanie Flores, who was inexperienced in federal criminal law and procedure, was unprepared to present Petitioner's case at trial, and utilized threats and extortion to

coerce Petitioner to enter into plea agreement with Respondent and plead guilty to the charged offenses.

3.          Petitioner was deprived of his Sixth amendment Guarantee of effective assistance of counsel by Stephanie Flores, who, after being informed by Petitioner that he wished to speak with, and seek the assistance of the Philippine Consul pursuant to his rights under the Vienna Convention, advised Petitioner that the Vienna Convention did not apply to him or his case, and did not afford him any rights in the matter.

4.          Petitioner was deprived of his Sixth Amendment Guarantee of effective assistance of counsel on appeal by appellate counsel Jehan'Ad G. Martinez who failed to raise Petitioner's claim of deprivation of rights under the Vienna Convention and ineffective assistance of counsel at the trial level.

## I.  Preparatory Statement

Petitioner is not an attorney, and is not represented by an attorney in this action.  Petitioner prepares this section 2255 motion and brief in support thereof without the benefit of defense counsel and under the severe conditions of imprisonment at the Federal Correctional Institution, FCI-SHERIDAN.  Therefore, Petitioner specifically relies on, and with due respect for the judicial wisdom of this Court, asks this Court to take judicial notice of, and be ever mindful of the standard and intent of the United Sates Supreme Court in Haines v. Kerner, 404 U.S. 519 (1974), which requires the Court to afford Petitioner, who makes this appearance pro se, a certain degree of leeway and leniency with regard to formal rules

Page 2,    BRIEF IN SUPPORT OF MOTION, 28 U.S.C. 2255

and procedures, that Petitioner's pleadings are to be construed liberally, in a light most favorable to Petitioner, and that Petitioner's pro se pleadings are not to be held to the same rigid standards of pleadings drafted by attorney's.

## II. Background

The foregoing Section I, is fully incorporated herein by this reference.

On August 3, 1999, Petitioner was arrested for alleged offenses of the drug laws of the United States. On August 4, 1999, a criminal complaint was issued, and on August 11, 1999, the first indictment was handed down charging Petitioner with violations of the drug laws of the United States. On August 17, 1999, Petitioner appeared in the U.S. District Court for the Territory of Guam for initial appearance and did then enter a plea of not guilty to the charged offenses.

On October 20, 1999, the government filed it's four (4) count Superseding Indictment against Petitioner charging Petitioner with criminal conspiracy to import methamphetamine, 21 U.S.C. Sect. 952(a), 960 and 963; importation of methamphetamine, 18 U.S.C. Sect. 2, and 21 U.S.C. Sect. 952 and 960; attempt to possess methamphetamine with intent to distribute, 21 U.S.C. 841(a) and 846; and, use of a communication facility to facilitate a drug crime, 21 U.S.C. Sect. 843(b). On October 21, 1999, Petitioner appeared before the district court for arraignment as to the Superseding Indictment and did then enter a plea of not guilty to all charges.

On January 25, 2000, Petitioner did enter into a plea agreement with the government, and before the district court, did change his plea from not guilty on all charges, to guilty to the offense charged in counts one (1) and three (3). Upon the government's motion, the district court dismissed counts two (2) and four (4).

On May 21, 2002, Petitioner appeared before the district court for sentencing, and was then sentence to a term of 135 months imprisonment and 48 months supervised release as to count one, and 135 months imprisonment and 60 months supervised release on count three, each to run concurrent with the other.

### III. Grounds

### Ground One

The foregoing Sections I and II are fully incorporated herein by this reference.

> Petitioner, a Philippine National, was deprived of his rights under Article 36 of the Vienna Convention on Consular Relations when arresting officers and other federal officials failed to inform him of his rights established by Article 36 of the Vienna Convention, and failed to notify the Philippine Consulate of his arrest and detention.

The Vienna convention is a lawful Treaty of the United States on Consular relations, and pursuant to Article 6, Cl. 2 of the United States Constitution, is on par with said Constitution, and stands as supreme law. Article 36(1)(b) of the Vienna Convention states:

> "The said authorities shall inform the person concerned without delay of his rights under this sub paragraph."

In the case of <u>INS v. Cardozo-Fonesca</u>, 480 U.S. 421, 441; 107 S.Ct. 1207; 94 L.Ed.2d 434 (1987), the Supreme Court states, "Moreover, the language of the provision (36(1)(b)) is not precatory, but rather mandatory and unequivocal."

At no time subsequent to Petitioner's arrest on August 3, 1999, did arresting officers or other federal officials inform Petitioner of his rights under the Vienna Convention, or notify the Philippine Consulate of his arrest and detention.

At some point in late December 1999, or early January 2000, while detained and awaiting jury trial, Petitioner was informed by another detainee of the existence of the Vienna Convention, and that he may have certain rights to seek further assistance from the Philippine Consul.

Petitioner made inquiry of defense counsel Stephanie Flores regarding any rights he may have under the Vienna Convention, and indicate to her that he wanted to speak with the Philippine Consul. Ms. Flores then adamantly informed Petitioner that the Vienna convention did not apply to him or his criminal case, afforded him no rights, and that she would not waste her time on Petitioner's frivolous legal theories.

Examination of the record in this case conclusively shows that Article 36 of the Vienna Convention was violated by arresting officers and other federal officials by their failure to inform Petitioner of his right to contact the Philippine consulate, and that defense counsel Ms. Flores, an officer of the court, further deprived Petitioner of his rights when she misinformed Petitioner as to those rights, and refused to facilitate his contact with the Philippine consulate.

In the case of U.S. v. Lombera-Camorlinga, 170 F.3d 1241, the Ninth Circuit Court of Appeals states "Upon showing that the Vienna Convention on Consular Relations was violated by a failure to inform an alien of his right to contact his Consulate, an alien who is a defendant in a criminal proceeding has the initial burden of producing evidence showing prejudice from the violation of the Convention, and if that burden is met, it is then up to the government to rebut the showing of prejudice to avoid dismissal of case."

Further, the Court of Appeals went on to state, "A foreign national is inherently prejudiced when detained or in custody in a foreign criminal justice system. A consuls assistance can place him on par with a non-foreigner." Lombera-Camorlinga, 170 F.3d at 1244, ft.nt. 3.

Petitioner was, as the Ninth Circuit Court of Appeals states, "inherently prejudiced," and critically disadvantaged by being an alien defendant in a foreign criminal proceeding. Petitioner fully intended to take the matter to jury trial, and adamantly persisted in his plea of not guilty to the charged offenses up to the time that defense counsel Flores, in an eleventh hour full court press, utilized threats, undue influence, and blatant lies to coerce and cow Petitioner into accepting the government plea offer. Had Petitioner been afforded the benefit of assistance from his Philippine Consul, defense counsel Flores would not have been able to coerce Petitioner to abandon his right to jury trial.

Petitioner further asserts in other grounds herein, that defense counsel Flores was grossly inexperienced in federal criminal trial procedure. In fact, Petitioner's case was her first federal criminal case. Petitioner asserts in other grounds herein that Flores had failed to prepare for the

jury trial that Petitioner had lawfully demanded, and for the purpose of concealing her lack of trial preparation, shortly before trial was scheduled to commence, fraudulently used her influence to secure Petitioner's acceptance of the government plea offer by lying to Petitioner regarding a secret government witness that would testify at trial, virtually insuring Petitioner's conviction and probable resultant sentence of life in prison.

Once again, had Petitioner been afforded the benefit of assistance of his Philippine Consul, Flores would not have been able to conceal her lack of preparation for trial, or successfully utilize such threats to intimidate and coerce Petitioner to accept the government's plea offer.

Lastly, Petitioner now faces certain deportation as a result of the conviction in the matter. Had Petitioner been afforded the benefit of assistance from his Philippine Consul, he would not likely now face such deportation.

Petitioner makes the necessary showing that Article 36 of the Vienna Convention was violated by arresting officers and other government officials, and as a result of that violation, he has been deprived of his personal rights under the Convention. Petitioner has demonstrated the prejudice he has suffered as a result of the violation of the Convention and deprivation of his rights, and as such, has demonstrated that he is entitled to the relief requested as to ground one. Wherefore, and for all the reasons set forth above, Petitioner respectfully requests the Court dismiss the criminal case and resultant judgment of conviction against Petitioner in its entirety.

## Ground Two

The foregoing Sections I and II, and Ground One are fully incorporated herein by this reference.

Petitioner was deprived of his Sixth Amendment Guarantee of effective assistance of counsel by defense counsel Stephanie Flores.

Petitioner alleges herein that defense counsel Stephanie Flores rendered ineffective assistance of counsel during the pendency of her representation of Petitioner in the criminal matter.

Strickland v. Washington, 104 S.Ct. 2052 (1984), is the defining case and standard by which a claim of ineffective assistance of counsel is tested.

Under Strickland, the Supreme Court has determined that to sustain a claim of ineffective assistance, the claimant must demonstrate:

1.    Counsel's performance was deficient; and,

2.    The deficient performance prejudiced the defense so as to deprive the claimant of a fair trial.

"A prisoner seeking habeas relief must show that his counsel's representation fell below an objective standard of reasonableness, and was so prejudiced that, absent his counsels errors, the outcome of the proceedings would have probably been different." Eggleston v. United States, 798 F.2d 374, 376 (9th Cir. 1986), citing Strickland v. Washington, 466 U.S. 668, 689 (1984).

As shown in Section II "Background," this instant habeas corpus action stems from the conviction and sentence in the captioned criminal case, entered as of record on May 28, 2002.

Based on purported probable cause of suspicion of illegal drug activity, Petitioner was arrested by U.S. Customs agents on August 3, 1999.

Case 1:04-cv-00014   Document 1   Filed 03/17/2004   Page 14 of 51

Initially, Rawlen Mantonona was appointed by the Court to represent Petitioner. At Petitioner's request, Mantonona filed motion to withdraw. On September 15, 1999, the Court appointed J. Basil O'Mallan to represent Petitioner, and upon Petitioner's request, O'Mallan then also filed motion to withdraw as counsel. On September 29, 1999, the Court then appointed Ms. Stephanie Flores as defense counsel, who, on October 8, 1999, filed motion for continuance. On October 20, 1999, the government filed the Superseding Indictment and proceeded with trial preparation. On October 21, 1999, trial was scheduled to commence on November 1, 1999.

On January 13, 2000, during the pretrial stage, Flores filed exparte motion to withdraw as counsel, which was denied by the Court on January 20, 2000. As indicated by the Court record, following denial of defense counsel's exparte motion to withdraw, the government again proceeded with trial preparation. On January 25, 2000, the government filed a plea agreement and Petitioner entered pleas of guilty to Counts One and Three.

Subsequent to entry of the plea agreement and Petitioner's pleas of guilty to the two counts, Flores again made exparte motion to withdraw as counsel, and the Court granted Flores exparte motion on September 11, 2001. On September 17, 2001, the Court appointed William Gavras as Petitioner's counsel of record.

Following the above related proceedings, at Petitioner's request, Gavras filed motion to withdraw as counsel and motion to withdraw plea.

### Factual History

On August 3, 1999, Petitioner, a passenger in a vehicle driven by part-time co-worker Ariel Gatos, stopped at the United States Post Office to

check his mail. Petitioner found in his P.O. Box a Post Office package notice which indicated that a package addressed to one of his co-workers at Petitioner's P.O. Box address, was at the Post Office Service counter. Petitioner went to the service counter and presented the notice slip to a Postal worker. The Postal worker informed Petitioner that the package was in the back and then left the service counter to retrieve it. Approximately twenty minutes later, a different individual came to the counter and presented Petitioner the package. This event was a one time occurrence, whereas Petitioner had never before received any packages at his P.O. Box, addressed to his P.O. Box in the name of another party.

After Petitioner and the individual driving the vehicle left the Post Office they drove towards the home of another co-worker Jose Ramos to pick him up for work. On the way to Ramos home, as a result of a previous experience in 1995, Petitioner became suspicious of the package and the events surrounding it's delivery to his P.O. Box. Petitioner expressed his concern to Gatos who stated Petitioner was just being paranoid. Nonetheless, Petitioner could not shake the feeling that something was wrong about the package. His co-worker, the individual to whom the package was addressed had not mentioned to Petitioner that he expected a package to arrive at Petitioner's P.O. Box. Gatos told Petitioner to open the package and see what was inside, but Petitioner refused to do so. After arriving at Ramos home, Gatos then picked up the package and against Petitioner's wishes, opened the package, examined the contents, and assured Petitioner that there was nothing unusual about the package or it's contents. Petitioner believes that Gatos then placed the

package inside the cab of the pickup truck. Ramos was not at home, so Gatos decided to go into Ramos home to use the telephone. Shortly thereafter, Petitioner heard considerable noise coming from the neighboring apartment complex, and then spotted individuals that were pointing toward him and yelling. Almost immediately thereafter, numerous individuals identifying themselves as U.S. Customs agents swarmed the scene, and ordered Petitioner at gunpoint to lie face down on the ground. Petitioner was then handcuffed with is hands behind his back and then taken inside Ramos home. Shortly thereafter, while inside Ramos home, with his hands still cuffed behind him, Petitioner felt a light spray being applied to his hands, which he later discovered was what government agents call clue spray or dye.

The following day, August 4, 1999, a criminal complaint was issued against Petitioner charging him with offenses of the United States drug laws. On August 11, 1999, the government filed it's first indictment against Petitioner, and on October 20, 1999, the government filed it's superseding indictment against Petitioner.

At every possible opportunity, Petitioner attempted to explain to each of the appointed defense counsels the events as they transpired, along with his belief that government agents had intentionally set him up for the drug bust, quite probably in a vindictive vendetta retaliation for a previous failed attempt to prosecute Petitioner under similar circumstances in 1995. In that criminal prosecution, the presiding judge dismissed the entire case with prejudice for lack of evidence.

Page 11, BRIEF IN SUPPORT OF MOTION, 28 U.S.C. 2255

Mantonona, Petitioner's first counsel insisted instead that the government had caught Petitioner red handed, and refused to consider Petitioner's assertions, and insisted Petitioner accept whatever plea agreement the government would offer. Petitioner however was absolutely adamant that he would take the matter to jury trial. Mantonona refused to consider the matter, and Petitioner and Mantonona mutually agreed that Mantonona would motion the court to withdraw as counsel.

Again, when Petitioner spoke with defense counsel Flores, he attempted to explain to her what transpired in the matter, but she too, attempted to persuade Petitioner to accept the government's plea offer. Petitioner instead, was again adamant that he intended to take the matter to jury trial. Flores reluctantly agreed to prepare for trial.

On numerous occasions Petitioner made attempts to contact Flores regarding her trial preparation. On eight separate occasions between October 11, 1999 and January 4, 2000, Petitioner sent by facsimile from the Guam Detention Facility, handwritten letters to Flores inquiring as to her efforts and successes in preparation for trial, please refer to Attachments A-1 through A-8. Flores was constantly elusive and evasive with Petitioner, and in fact, did very little if any trial preparation during this time.

On the evening of January 24, 2000 at approximately 7:00 pm, Flores and another attorney associate with the law firm of Phillips and Bordallo came to Post #6, Mangilou D.O.C. to visit with Petitioner. Both Flores and her associate were extremely agitated, and attempted to persuade Petitioner to accept the government plea offer. Petitioner was equally adamant that

he had been set up by government agents, and that he fully intended to take the matter to jury trial. Both Flores and her associate became extremely angry at Petitioner, ranting that the government now had a secret witness that had just arrived or was soon to arrive in Guam from the mainland (USA) to testify at trial against Petitioner. Flores refused to identify or disclose the identity of the purported secret witness, but nonetheless, insisted that this secret witness testimony, whether or not true testimony, would virtually ensure Petitioner conviction on all counts, and that Petitioner would then face, and in all likelihood receive a life sentence in federal prison without the possibility of parole. She further stated that either Petitioner accept the government's plea agreement or she would literally abandon the case, renew her motion to withdraw as defense counsel, and Petitioner would then have to fend for himself, stating "you've reached your limit with the Court. The Court won't appoint you another attorney. I'm your only hope."

Petitioner was utterly stunned, emotionally drained and traumatized. Although Petitioner had continually and consistently maintained his innocence to defense counsel, had maintained his assertion that he was being set up by government agents, and had maintained his desire and intention to take the matter to jury trial, he simply no longer had the strength to resist defense counsels constant barrage of threats and coercive tactics designed to convince Petitioner to cow to the government charges by capitulating to the government's plea offer.

Page 13, BRIEF IN SUPPORT OF MOTION, 28 U.S.C. 2255

## Argument

Was Petitioner deprived of his right to effective assistance of counsel in violation of the Sixth and Fourteenth Amendments to the United States Constitution?

Ineffective assistance of counsel is reviewed de novo, U.S.C.A., Amend. 6.

As a general matter, ineffective assistance of counsel claim should be brought in collateral habeas proceeding because "the appellate record often lacks a sufficient evidentiary basis as to what counsel did, why it was done, and what, if any prejudice resulted." U.S. v. Quintero-Barraza, 78 F.3d 1344, 1347 (9th Cir. 1995).

The standard set forth in U.S. v. Cronic, 466 U.S. 648, 658-59; 104 S.Ct. 2039, 2046-46; 80 L.Ed.2d 657; U.S. v. Swanson, 943 F.2d 1070, 1072 (9th Cir. 1991) should apply in this instant case in that defense counsels errors were so egregious that Petitioner need not demonstrate the reliability of the trial outcome.

In reviewing defense counsel's performance to determine if defense counsel's errors involve "actual or constructive denial of counsel during a critical stage of the proceedings, or where counsel fails to subject the government's case to adversarial testing, a per se presumption of prejudice arises." Cronic, 446 U.S. at 659; Strickland, 466 U.S. at 702.

## Factual Basis

Petitioner asserts that when defense counsel(s) all refused to discuss or investigate Petitioner's claims of actual innocence of the charged offenses, and Petitioner's claim that Customs Agents had set him up in a

Case 1:04-cv-00014   Document 1   Filed 03/17/2004   Page 20 of 51

vindictive vendetta retaliation for their failure to successfully prosecute Petitioner in a similar case scenario in 1995, coupled with defense counsels indifference and refusal to accommodate Petitioner's numerous requests for information and updates relative to defense counsels purported trial preparation (see Att. A-1 through A-8), defense counsel rendered deficient performance/ineffective assistance.

"[H]ad counsel performed a proper investigation, he (she in this instant case) could have offered substantial and wrenching evidence of Petitioner's claims." Visciolli v. Woodford, 288 F.3d 1097 (9th Cir. 2002). "A total lack of communication results in ineffective assistance of counsel." U.S. v. Walker, 915 F.2d 480, 485.

Petitioner further asserts that his acceptance of the government plea offer and subsequent pleas of guilty were improperly induced by defense counsel Flores and her associate attorney with the law firm of Phillips and Bordallo. Flores and her associate threatened Petitioner telling him the government had a secret witness who had just arrived or would soon arrive in Guam to testify at trial against him. Flores and her associate adamantly claimed that whether or not the secret witnesses testimony was the actual truth was irrelevant, that his or her testimony would virtually ensure Petitioner's conviction on all counts, and that Petitioner would then face, and very likely receive a sentence of life in prison without the possibility of parole.

Flores further demanded petitioner accept the government plea offer or else she would again move to withdraw from Petitioner's case and Petitioner would then be left without any attorney representing himself at trial because the Court was basically fed up with Petitioner's antics.

Page 15,  BRIEF IN SUPPORT OF MOTION, 28 U.S.C. 2255

"All advice, assistance, and guidance provided after such an outburst would be fatally suspect, as would the 'willingness' of a defendant to follow the attorneys lead.

Such a disrespectful and inappropriate eruption would signal and be tantamount to (unless somehow cured) 'total lack of communication' for exceeding the parameters of any duty on the part of counsel to deliver to his client a 'pessimistic prognosis of his legal position.'" U.S. v. Rogers, 769 F.2d 1418, 1424 (9th Cir. 1985).

### Defense Counsel Failed To Conduct Adequate Discovery
### Failure to Prepare, i.e. Jenks, Giglo, Horthon or Brady

As evidenced by the Court record (Docket), defense counsel failed to file a single discovery request motion throughout the entire pre-trial phase.

Here, defense counsel intentionally deprived Petitioner of valuable evidence that would demonstrate the weakness of the government's case.

A prosecutor must be completely honest during negotiation about the relative strength of the governments case against the defendant. "From a practical standpoint, Prosecutors frequently exaggerate the quality of evidence at their disposal. Thus, [a] prosecutor cannot use deception against a defendant. A defendant's guilty plea is invalid if it is induced by misrepresentations by the prosecutor." see U.S. v. Cortez, 973 f.2d 764, 767-68 (9th Cir. 1992).

The Court record itself reveals, due to counsels failure to pursue necessary and pertinent discovery materials, certain mitigating and exculpatory factors where withheld during the critical stages of the pre-trial process, which in turn caused defendant extreme prejudice.

Page 16,   BRIEF IN SUPPORT OF MOTION, 28 U.S.C. 2255

The U.S. Court of Appeals for the Ninth Circuit states: "Counsel have a duty to make reasonable investigation such that they are able to make informed decisions about how best to represent their clients." Caro v. Calderon, 154 f.3d 1185, 1187 (9th Cir. 1998). Defense counsel has made no showing for failing to do so, Calderon, 154 F.3d at 1188.

Counsels failure to conduct any investigation as outlined above and failure to preserve and present mitigation factors and exculpatory evidence is an accommodation to the prosecutions efforts to pile inference upon inference of Petitioner's purported appearance of criminal intent, and in so doing, and improperly negatively influencing the Court's perceptions of Petitioner's character.

Similarly, the Ninth Circuit held that "prejudice can result from government influence which destroys the defendant's confidence in his attorney. Thus, a change in defense counsel caused by prosecutions misconduct itself establishes the requisite prejudice to vacate his conviction." U.S. v. Almlami, 111 F.3d 705, 711 (9th Cir. 1997).

In relation to the above evidence and record herein, the performance of defense counsel(s) was defective as follows:

a.     Defense counsel(s) failed to conduct a reasonable adequate investigation of the facts and circumstances of Petitioner's claims of false arrest and vindictive prosecution. The record reveals a complete lack of pre-trial activity such as discovery motions or discovery requests which would otherwise be expected in a case such as this. The only motions that were filed during these critical stages were each of defense counsel(s) motions to withdraw as defense counsel.

b.  Defense counsel(s) failed to adequately communicate with Petitioner and each other throughout the proceedings . Counsel(s) would not respond to Petitioner's letters so that Petitioner could be informed of any updates regarding the strength of the prosecutions case and defense counsels trial preparation. Further, defense counsel failed to provide Petitioner with mitigating or exculpatory information disclosed to counsel which added credence to Petitioner's claims of actual innocence and a government set up.

c.  Defense counsel endorsed the false information as provided to counsel by the prosecution regarding an "unexpected secret witness." Obviously during the crucial interim period just prior to trial proceedings counsel utilized improper tactics to coerce Petitioner to accept the government plea offer, expressing circumstances that lead Petitioner to believe that he would be left to fend for himself. counsel's misrepresentations of truth and statements regarding her immediate withdrawal from the case corroborate Petitioner's confusion, confirming counsel's failure to invest adequate time to reviewing Petitioner's case history and exploiting the holes in the government's outlined evidence and proceedings prior to arrest, was an accommodation to the government's vindictive prosecution.

Based on the foregoing reasons, the following facts concerning the performance of defense counsel(s) are established:

a.  Defense counsel(s) violated their obligation of loyalty to Petitioner.

b.  Defense counsels failed to vigorously defend the best interests of petitioner.

Page 18,  BRIEF IN SUPPORT OF MOTION, 28 U.S.C. 2255

c.      Defense counsel(s) failed to adequately test the merits of the government's case.

d.      Defense counsel failed to adequately investigate the facts and circumstances of Petitioner's involvement in the charged offenses.

e.      Defense counsel failed to adequately communicate with each other as relief counsel when relieved.

f.      Defense counsel(s) failed to adequately communicate with Petitioner, including failure to advice him of government disclosed mitigation exculpatory information.

As a result of defense counsel(s) defective performance, Petitioner was gravely prejudiced as follows:

i.      Petitioner was pressured into making unintelligent and involuntary guilty pleas.

ii.     Petitioner was denied the right to record and preserve the following facts and evidence:

1.   Where did the package actually come from?

2.   How was the package actually discovered?

3.   Was the sniffer dog that allegedly alerted Customs Agents or Postal workers to the package, on duty every day at the subject Post Office, or, was the sniffer dog at that location only on that particular day?

4.   Were any of the investigating and/or prosecuting Customs Agents that were involved with the instant investigation, also involved in the investigation which resulted in the failed attempt to prosecute Petitioner in 1995, and, where any of the

Page 19,   BRIEF IN SUPPORT OF MOTION, 28 U.S.C. 2255

investigators in either the 1995 investigation or the instant case investigation in any way related to any of Petitioner's defense counsel(s) in the instant case?

5. Disclosure of any Postal Service records which indicate whether or not any other packages addressed to any other individual(s) other than Petitioner, at Petitioner's P.O. Box.

6. Information regarding the purported discovery of the "sham" bags of rock salt under the bed liner of the pickup truck.

7. Depositions and statements of any neighbors that may have witnessed, first hand, the events of the alleged search of the pickup truck as conducted by U.S. Customs Agents in Jose Ramos' front yard.

8. The disclosure of any fingerprints on the vehicle surrounding the area where the "sham" bags containing rock salt were purportedly discovered during the purported search of the vehicle.

9. Evidence as to who actually opened the package.

10. Any and all other potential evidence which would tend to lend credibility to Petitioner's claim that Customs Agents had willfully and intentionally set Petitioner up, and that the work product of Custom Agents purported investigation was the product of a vindictive assault against Petitioner.

Considered in toto, these instances clearly evince that defense counsel's performance fell well below acceptable standards of effective assistance of counsel, see Cuyler v. Sullivan, 446 U.S. 335, 350; 100 s.Ct. 1708, 1719; 64 L.Ed.2d 333 (1980).

Furthermore, Petitioner suffered actual prejudice as a consequence of said defective representation. Even if actual prejudice were absent, such conduct was at times so egregious that Petitioner is entitled to per se presumption of prejudice. As established, Petitioner has successfully demonstrated that a conflict of interest adversely affected counsel's performance, counsel's conduct regarding particular aspects of the proceedings, and counsel's advocacy on behalf of Petitioner, see U.S. v. Miskinis, 966 F.2d 1263, 1268 (9th Cir. 1992).

although the District Court did not inquire into the extent of the conflict between Petitioner and appointed counsel(s), nor assumed the opportunity to do so by authority of discretion, it is evident that there was a serious breach of trust and a significant breakdown in communication that substantially interfered with the attorney client relationships.

"Petitioner's letters to Flores (Att. A-1 through A-8) make it clear on the record that he held little if any trust in his counsel, see Mckee v. Harris, 649 F.2d 927, 932 (2nd Cir. 1981).

"The extent of conduct can also be inferred from the appointed counsel's responses and conduct." see Willows v. U.S., 594 F.2d at 1260. "A defense attorney who abandons his duty of loyalty to his client and effectively joins the state in an effort to attain a conviction ... suffers from an obvious conflict of interest. Such an attorney, like unwanted

Page 21, BRIEF IN SUPPORT OF MOTION, 28 U.S.C. 2255

counsel, 'represented the defendant only through a tenuous and unacceptable legal fiction." Faretta v. California, 422 U.S. 806, 821; 95 S.Ct. 2525, 2534; 45 L.Ed.2d 562 (1975).

Considering counsel's affidavits and Petitioner's letters (Att. A-1 through A-8) in toto, Petitioner's allegations are clearly supportive of this Court's holding that findings in the record of substantial facts that Petitioner has demonstrated a conflict of interest and ineffective assistance of counsel requiring reversal, specifically whereas Petitioner contests the findings of guilt and asserts his actual innocence of the charged offenses.

The ultimate result is that Petitioner was denied effective assistance of counsel in violation of his Fifth and Fourteenth Amendment guarantee to due process, see Miller v. Champion, 161 F.3d 1249, 1255 (10th Cir. 1998), specifically affecting his Sixth Amendment right to effective assistance of counsel, see Strickland v. Washington, 446 U.S. 668.

Petitioner asserts that he has demonstrated ineffective assistance of counsel as to Ground Two, and that he is entitled to the relief from judgment and sentence in the captioned criminal case. Wherefore, and for good cause shown, Petitioner respectfully requests this Court find in Petitioner's favor as to Ground Two, and issue it's Order to vacate or set aside the conviction and sentence in the captioned criminal matter, and dismiss the criminal case against Petitioner with prejudice.

## Ground Three

The foregoing Sections I and II, and Grounds One and Two are fully incorporated herein by this reference.

> Petitioner was deprived of his Sixth Amendment Guarantee of effective assistance of counsel by defense counsel Stephanie Flores when Flores failed to guard, enforce and protect Petitioner's rights under Article 36 of the Vienna Convention on Consular Relations.

Under both the first and second prongs of Strickland, and in light of Grounds One and Two above, counsels deficient performance is apparent.

As demonstrated in Ground One, arresting officers and other federal officials violated Article 36 of the Vienna Convention by failing to inform Petitioner of his rights under that provision of the Vienna Convention on Consular Relations. Defense counsel Stephanie Flores also failed to inform Petitioner of his Vienna Convention rights. In U.S. v. Murphy, 116 F.3d at 100, the Court held that "Treaties are one of the first sources that would be consulted by a reasonably diligent counsel representing a foreign national." However, in late December of 1999 or early January of 2000, while under federal detention and awaiting jury trial in the matter, Petitioner was instead informed by another detainee of the existence of the Vienna Convention on Consular Relations, and that he may have certain rights pursuant to the Convention that could benefit him throughout the criminal process. Prior to this revelation by another detainee, Petitioner had no knowledge of the Vienna Convention on Consular Relations, and had Petitioner not been so informed by another detainee, he quite probably never would have learned of the existence of the Convention.

Petitioner subsequently made inquiry of Flores regarding the Vienna Convention and any rights he may have under the Convention, and did

indicate to her his desire to speak with the Philippine Consul. Rather than facilitate Petitioner's request, Flores adamantly if not belligerently informed Petitioner that the Vienna Convention did not apply to him or his criminal case, afforded him no rights whatsoever in the criminal matter, and that she would not waste her time on Petitioner's frivolous legal theories.

Petitioner again asserts that defense counsel Flores was so grossly inexperienced in the complex field of criminal defense representation and defense representation of a foreign national, that she had little if any actual knowledge of the Vienna Convention or Petitioner's rights under Article 36 of that Convention. As cited above in Murphy, 116 F.3d at 100, Treaties such as the Vienna Convention on Consular Relations is one of the first sources that should be consulted by defense counsel representing a foreign national. Understandably so. As succinctly stated by the Ninth Circuit Court of Appeals in U.S. v. Lombera-Camorlinga, 170 F.3d at 1244, ft.nt. 3, "A foreign national is inherently prejudiced when detained or in custody in a foreign criminal justice system. A consuls assistance can place him on par with a non-foreigner."

As demonstrated in Ground One above, the United States Supreme Court states that the language of the provision (Art. 36) is not "precatory, but rather mandatory and unequivocal," INS v. Cardozo-Fonesca, 480 U.S. 421 at 441, and that "Treaty Provisions that establish individual rights must be enforced by the Courts of the United States." United States v. Rauscher, 7 S.Ct. 234 (1866). The Vienna Convention on Consular Relations is a lawful treaty of the United States, on par with the Constitution of the United States as supreme law of the land. The rights established under the Vienna Convention are personal rights, U.S. v.

Rangel-Gonzales, 617 F.2d 529, 532 (9th Cir. 1980) stating, "[t]he right established by the regulation [intended to ensure compliance with the Convention] and in this case by treaty is a personal one."

The Vienna Convention, a lawful Treaty of the United States establishing personal rights to foreign nationals which are on par with all other Constitutional rights and protections, are thus the supreme law of the United States, and thus, the Courts are bound by solemn duty to guard, enforce and protect those rights. Defense counsel Flores, an officer of the Court and therefore an extension of the Court shares equally that obligation and duty to guard, enforce and protect Petitioner's rights under the Vienna Convention.

As Petitioner demonstrates above in Ground One, which is fully incorporated herein in Ground Three by this reference as if reproduced herein in its entirety, Petitioner was seriously prejudiced when arresting officers and other federal officials violated the Convention. Petitioner was equally prejudiced in the same manner and degree when defense counsel Flores failed to inform Petitioner of his rights under the Vienna Convention, and later facilitate his request to speak with the Philippine Consul after Petitioner learned from another detainee of the Convention.

Contrary to Flores erroneous reply to Petitioner's inquiry as to the Convention and his desire to speak with the Philippine Consul, that the Vienna Convention did not apply to him or his criminal case, nor did it afford him any rights whatsoever, it is clear beyond question that the Convention did and does apply to him and his criminal case, and did and does afford him specific rights.

Page 25,   BRIEF IN SUPPORT OF MOTION, 28 U.S.C. 2255

In light of the fact that Treaties such as the Vienna Convention on Consular Relations is one of the first sources that should be consulted by a reasonably diligent defense counsel representing a foreign national in a criminal matter Murphy, 116 F.3d at 100, defense counsel Flores statement that she would not waste her time on Petitioner's frivolous legal theories demonstrates that Flores was either completely unaware of the Convention and/or the rights afforded Petitioner via the Convention, or that Flores intentionally intended to thwart or prevent Petitioner from exercising his rights under the Convention. Either way, Flores actions meet both prongs of the Strickland test, and her ineffective assistance of counsel is established.

Petitioner asserts that he has demonstrated ineffective assistance of counsel as to Ground Three, and that he is entitled to the relief from judgment and sentence in the captioned criminal case. Wherefore, and for good cause shown, Petitioner respectfully requests this Court find in Petitioner's favor as to Ground Three, and issue it's Order to vacate or set aside the conviction and sentence in the captioned criminal matter.

Ground Four

The foregoing Sections I and II, and Grounds One, Two and Three are fully incorporated herein by this reference.

///

///

///

///

Page 26,   BRIEF IN SUPPORT OF MOTION, 28 U.S.C. 2255

Petitioner was deprived of his Sixth Amendment Guarantee of effective assistance of counsel by appellate counsel Jehan'Ad G. Martinez who failed to raise Petitioner's claim of deprivation of rights under the Vienna Convention and ineffective assistance of counsel at the trial level.

Under both the first and second prongs of Strickland, and in light of Grounds One, Two and Three above, appellate counsel's deficient performance is apparent.

Petitioner reasserts and incorporates herein in Ground Four, every statement, allegation and claim of prejudice set forth in Grounds One, Two and Three, as if reproduced in their entirety herein.

In Ground One, Petitioner shows that arresting officers and other federal officials violated Article 36 of the Vienna Convention and thus deprived Petitioner of his rights established under Article 36 of the Convention. Petitioner also shows that he was prejudiced by the violation of the Convention and deprivation of his rights under Article 36 of the Convention.

In Ground Two, Petitioner shows that defense counsel Stephanie Flores, in violation of Petitioner's Sixth Amendment Guarantee, rendered ineffective assistance of counsel throughout the pendency of her representation of Petitioner. Petitioner shows that Flores was grossly inexperienced and unqualified to represent Petitioner, a foreign national, in the criminal matter; that Flores failed to prepare for jury trial; that Flores utilized false and misleading information, threats and coercion to secure the plea agreement and Petitioner's plea of guilty; and that Flores failed to adequately protect and enforce Petitioner's due process rights and right to be informed of the true nature of the charges.

Page 27, BRIEF IN SUPPORT OF MOTION, 28 U.S.C. 2255

In Ground Three, Petitioner shows that defense counsel Stephanie Flores, in violation of Petitioner's Sixth Amendment Guarantee and Petitioner's rights under Article 36 of the Vienna Convention on Consular Relations, rendered ineffective assistance of counsel when Flores failed to inform Petitioner of his rights under the Vienna Convention. Defense counsel Flores further rendered ineffective assistance of counsel and further deprived Petitioner of his rights under the Vienna Convention when, after Petitioner had learned from another detainee of the Convention and potential rights established by the Convention, Flores erroneously advised Petitioner that the Convention did not apply to him, did not apply to his criminal case, and afforded him no rights in the matter.

Despite Petitioner's requests, appellate counsel Martinez refused to raise or otherwise address on appeal any of Petitioner's claims set forth in Grounds One, Two and Three, and specifically stated that he could not, and would not raise Petitioner's ineffective assistance of counsel claims set forth in Grounds Two and Three above because he and defense counsel Stephanie Flores worked out of the same public defenders office.

Petitioner has the right to, and is entitled to the best defense and representation available to him at both the trial phase and appellate phase of the criminal proceedings. Appellate counsel Martinez' failure to present the issues set forth in Grounds One, Two and Three above for appellate review constitutes deficient performance within the first Strickland prong.

Had Martinez presented the issues set forth in Grounds One, Two and Three above for appellate review, the outcome of the appellate review would very probably have been different, including potential reversal of judgment

and/or dismissal of the criminal case, satisfying the second prong of Strickland.

Petitioner asserts that he has demonstrated ineffective assistance of counsel as to Ground Four, and that he is entitled to the relief from judgment and sentence in the captioned criminal case. Wherefore, and for good cause shown, Petitioner respectfully requests this Court find in Petitioner's favor as to Ground Four, and issue it's Order to vacate or set aside the conviction and sentence in the captioned criminal matter, and dismiss the criminal case against Petitioner with prejudice.

## Conclusion

Wherefore, and for good cause shown above, Petitioner asserts that he is entitled to relief from the sentence and conviction in the captioned criminal case, and respectfully requests the Court issue it's Order vacating the conviction and sentence, and dismissing the criminal case with prejudice.

Respectfully submitted this 8th day of March, 2004.

_____
Fernando Novelo Nostratis

/ / /

/ / /

/ / /

/ / /

/ / /

Page 29, BRIEF IN SUPPORT OF MOTION, 28 U.S.C. 2255

PHILIPP'S & BORDALLO
LAW OFFICE

Attn:                                          Oct. 11, 1999
    Atty. S. G. FLORES
    Attorney - at - Law
    410 West O'Brien Drive
    Hagåtña, Guam 96910
    Tel: 477 - 2223
    FAX: 477 - 2329

FR: Def: Fernando N Nostratis
    Federal Detention Facilities
    Hagåtña, Guam

Re:    U.S.A.  v.  F. Nostratis

    Dear Atty. Stephanie G. Flores,
        This letter will confirm our discussions
at our last meeting on Oct. 4, 1999 at
the Prosecution Office, and the matter which
I understand that you a pursuing on my
behalf. I advised you, that the Offered
Plea Agreement was not Acceptable and that
I wish to go to trial in this matter. I assume
that you have been preparing for trial all
along and that you only have some final items
to finish before you are completely prepared.
        First, We agreed that it is of the utmost
importance that you obtain authorization from
the courts to Retain a TAGALOG /ENGLISH
Translator, to assist. That you are preparing
all necessary motions and Others pleading to be
filed of your efforts and who the TRANSLATOR is.
        Second, in Order to present and adequate
and effective defense to the Charges. We discussed
witnesses that may be called at TRIAL to
testify on my behalf. These witnesses includes,
but not Limited to the following.
① Rizaldy M Pascual
② Jose Ramos - Tel: 632-3693
③ Henry del Rosario - Tel 646-3532

Oct. 11, 1999

The current location and phone numbers of that you may contact these people as soon as possible and arrange for their presence at TRIAL, by subpoena if necessary.

Third, all necessary pre-trial motions, such to suppress, physical evidence and statements and motions in limine are in preparation and have been or will be filed shortly.

Please provide me with a status report on the motions as well as complete copies of each.

If there is anyway I can assist you in any of this matters, please let me now. I look forward to your next visit.

Sincerely Yours,
Fernando Nostratis

Federal Detention Facilities
Hagatña, Guam

```
                        ********************
                        ***   TX REPORT   ***
                        ********************

        TRANSMISSION OK

        TX/RX NO              3828
        CONNECTION TEL               671 477 2329
        CONNECTION ID
        ST. TIME             10/12 10:24
        USAGE T              02'26
        PGS. SENT                3
        RESULT               OK
```

Pls. forward to Def. F. Mastrati...

```
********************
***   TX REPORT   ***
********************


TRANSMISSION OK

TX/RX NO              3974
CONNECTION TEL                671 477 2329
CONNECTION ID
ST. TIME              10/27 08:57
USAGE T               02'03
PGS. SENT                3
RESULT                OK
```

27 Oct. '99

TO: PHILIPP'S & BORDALLO
     Law Office
  Attn: Atty. Stephanie G. Flores
  Suite 102, 410 West O'Brien Drive
  Hagatña, Guam 96910
  Tel: 477-2223
  FAX: 477-2329

FR: Def. Fed. FERNANDO NOSTRATIS
   F.D.F. Hagatña, Guam 96910

RE: REQUEST TO FILE CHARGES TO ARIEL DATOS
    of 18 U.S.C 843 (b).

Dear Atty. S.G. FLORES,
    I write you a letter, Regarding to our
discussion on the phone last Tuesday 25 Oct. '99,
Your saying that your waiting for my witness,
Henry de Rosario, and you said that you going
to see me, But you didn't came. Yesterday
I called Henry del Rosario and He told me, that
He came already to your office and David Flores
was there too. You never told me, what is the
result of that Meeting or Interview "if I need to
know". And I asked you, if it possible to file a
charge to the guy who used my Mail Box without
my authorization. If its possible, I want you
to go ahead, file the ~~necc~~ necessary charges
against him, a 21. U.S.C. 843 (b).
    I believe that you understand what I am
saying. Please, try to let me know

what ever happened to the case, because we are going to be closer on my _Trial_ schedule. I want you to visit me anytime this week, please, and if there are more Discovery/papers or Documents that you need to give me, I want a copy of the said documents for my _TRIAL_.

One more thing, what I want to know the status of The Motion for my Temporary Release? I'am really appreciate to your Hard Working Time on my Behalf.

Sincerely,

Fernando Nostratis

F.D.F. B. 9
Hagatña, Guam

Nov. '99

TO: Phillips & Bordallo
Atty: Stephanie G. Flores
410 West O'Brien Drive
Hagåtña. Guam 96910

FR: Fernando Nostratis
Federal Detention Facilities
Hagåtña, Guam 96910


Dear Atty. S.G. Flores,
I write you a letter, regarding to my case,
I wont you to tell me, What is going on on status
of this case, I don't have any Knowledge about it,
where the TRIAL schedule, the Pre-trial and Everything
And the Motion for my Temporary Release if they have
a filed already I don't Know. I understand that you
are bussy for this time, But I worry about the
people that I gave you to be a Witnesses on my
behalf. I got some information that those people
are planning to leave Next Month to move in
California (Rizaldy de Pascual) the Owner of TRUCK.
that Arnel Datus borrowed. And Henry del Rosario,
to Philippines for good. Do you think this will
not effect to my defense? (if those people didn't
show-up to the Court during TRIAL.)
    Please call me or visit me this week
and let me Know if there are something
development of my case.

And if you have all the copy of the Motion that Atty. R. Montanona filed during his time on my case, I want it on my hand, Including the copy of the Grand Jury Transcripts.

If you give me a time to visit me this week was really appreciated.

Thank You,
Fernando Nostratis

To: Philipps & Bordallo's
    Low Office
    Atty. Stephanie G. Flores

Fr: Fernando Nostratis
    FDF Hagatna, Guam

Dear Atty. S.G. Flores,

This letter to you, was regarding to my case if there is some development. Many times that I called you and ~~tell~~ send a letter, but you don't give me any response, No returned call at all.

I think it is your duty to assist me as well as you are my counsel or Lawyer.

Second time, I asking you a copy of all the "Motion that had filed to the Court" But you don't give me any. I asked you also how many times to visit me, but you didn't give me an attention to discuss some important Matters of my case.

I am asking a clear answer "Why Henry del Rosario and Officer David Flores" of Customs was there at the same time during Interview at your Office, but you are saying that "Henry cannot Help a lot to my case" Also how come your source Information

Regarding to my Witnesses like Rizaldy Pascual and Henry del Rosario, that they are planning to move out Here to California and you didn't say nothing, it's sound you didn't worry about. I don't Understand, How you could say this to me. That is Why, I asked you to give me "all the copies of the MOTION that had been filed to the Court since the beginning of my case. I was looking that nobody will assits me in a good FAITH. Since Atty. R. Montanona, Atty. O'Mallon and YOU. I was very comfussing, what is the Kind of Processing that we have on my case, if there is a Violation of a Due Process or a Complict of Interest. Because untill now, I don't Understand what is going on...

I order you to visit me as soon as possible, because of some Information that I got, that the Govt. was trying to bring same people to Testify against me. That they said, this people are a DRUG ADDICT. And theire name was MR. NILO CARLOS, and ARMEL OR ARIEL DATUS, "the informant", I want you to get the Records of this people at Local Probation Officer about their pisse-test, I believe that this

people are still doing their Weekly Report at Our local Probation Office. My Knowledge regarding to the BOOK I Read, That the DRUG ADDICT was not Qualified to be a Witness at TRIAL. "(if I'm Right)".

Please try to visit me as soon as possible, and, if we have a right to file a MOTION to DISMISS this case, for the reasond that govt. no sufficient Evidence. or may be their is a VIOLATION of DUE PROCESS, of SPEEDY TRIAL ACT.

And Once again, I want you to visit me as soon as you Recieve this letter, and Thank You,

Respectfully,
Fernando Nostrofis

Dec. 17, 1999

To: Atty. S.G. Flores
Federal Public Defender
Philipp & Bordallo
Law Office

FR: Fed. Def. Ferdinand Mostrales
F.D.F. Hagatna, Guam

Re: Request of all motion coppies.

Dear Atty. S.G. Flores,

I am requesting a coppies of all document that you have Regarding to my case, "ALL MOTION THAT HAD BEEN FILED." Since the beginning of my case. As well our agreement last other day.

Second, I want you to "sit down with me" to discuss my case, Regarding what preparation that you prepared on my defense.

Third, I want to know, what is the result of my "Third Party Motion" that your'e saying "The Judge will denied." And one more things, Please, spend sometimes or a couple of

hours for me here, So that we could talk
nice and properly.

Your kind considerationion will be greatfully
appreciated, Thank You.

Respectfully,
Fernando Nostrofis
F.D.F. Hagatna, Guam
B-9

January 04, 2000

TO: Atty. Stephanie G Flores
    Philipp's & Bordallo
    Law office

FR: Det. Fernando Nostratis
    FDF Hagatna Guam

Re: REQUEST THE COPIES OF ALL MOTION

Dear atty, S.G. Flores,

    A day before Holiday, I recieved a papers from your office, those legal papers included the parts of the Discovery, which are the statements of some individual Govt. witnesses and the Three Others.

    But the last time, when you visit me here, you're saying that you are going to send me the papers that I want to have, which is the copies of all the "MOTION THAT HAD FILED TO THE COURT" according the PROCEDURE, and if still remember your "WORDS".

    Now, I want the clear answer if you have it, or not, If you have it, please send it to me the copies.

    . . .           thy, I want to have it on my hand, becau...      won't know what is going on in this case. You know that we are very, very close to the schedule of my TRIAL, and you never, never SIT DOWN WITH ME, to discussed about what is . . .

The way I feel to my self. I am an "AMATUER BOXER" that you going to bring me to "RING" to "FIGHT" with a "HEAVY WEIGHT" without any "TRAINING AND PRACTICE" and "NO ADVICER AT ALL."

I don't think that we gonna win. Now as far as my concern, if you still remember the "9th CANNON code of ABA'S PROFESSIONAL and RESPONSIBILITIES", you maybe come over to see me and Sit Down with me.

I understand, that your are so bassy this time, But you take my case, you must need to give me also a time to assist me. (In Good FAITH).

Maybe you dosen't care about me, because you are not the one in Jail, But, this is my life, and I am the one who supper everything, so maybe I have the right to say, What ever I want to say, Regarding to my case.

Untill now, I don't have a knowledge, when is the Trime Date schedule and why you didn't call me to see the Judge to hear from him, that my "MOTION FOR THE 3RD PARTY" had been denied.

Is there something Wrong about this case or there

"CONSPIRACY" Behind

this? Don't be upset, I am just asking and
I need only a clear result on that.

I don't know, when you going to see
me or visit me, But I got no choice, co'z
I can't do anything here, Just to wait for
your _____.

I'll not going to make this letter
longer, co'z I don't think that you not
going to give this an attention. Sorry,
for this letter of mine, if you don't feel
good, but this is my Real feeling to be
honest with you,

Respectfully,

Fernando Nostroba
FDF Detainee